Argued and submitted September 8, 2006, affirmed June 27, 2007

In the Matter of the Compensation of
Royce A. Norton, Claimant.

LIBERTY NORTHWEST INSURANCE CORPORATION
and Columbia Steel Casting Company, Inc.,
*Petitioners,*

*v.*

Royce A. NORTON,
*Respondent.*

04-03134; A129770

162 P3d 322

David O. Wilson argued the cause and filed the brief for petitioners.

George J. Wall argued the cause for respondent. With him on the brief was Welch, Bruun & Green.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

* Schuman, J., *vice* Ceniceros, S. J.

ORTEGA, J.

## ORTEGA, J.

Liberty Northwest Insurance Corporation (insurer) and Columbia Steel Casting Company, Inc. (employer) petition for judicial review of an order of the Workers' Compensation Board (board) determining that an audiogram offered by employer did not provide an adequate basis for offsetting claimant's award for hearing loss. Petitioners contend that the board erred as a matter of law in its interpretation and application of OAR 436-035-0250, a rule promulgated by the Director of the Department of Consumer and Business Services (director). We review for errors of law, ORS 183.482(7), (8); ORS 656.298(7), and affirm.

The following facts are taken from the board's order and are not disputed. Claimant began working in a steel foundry in 1956. Sometime before he began working for employer in April 1988 (most likely during a March 1988 pre-employment physical), claimant underwent an audiogram (the undated audiogram). The board found that it is "unclear when, or to what standard, the audiogram was calibrated. Additionally, the audiogram does not reveal whether claimant had been away from noise for 14 hours at the time the audiogram was performed. The undated audiogram was not based on American National Standards Institute (ANSI) S3.6 (1989) standards." (Record citations omitted.)

Twelve and one-half years later, in the fall of 2000, claimant underwent another audiogram that revealed moderate to severe or profound sensorineural hearing loss, prompting claimant to file a workers' compensation occupational disease claim. Shortly thereafter, Dr. Richard Hodgson examined claimant and concluded that the major contributing cause of his hearing loss was occupational work exposure since 1956.

Relying on the undated audiogram, insurer issued a notice of closure that purported to offset from claimant's hearing loss the amount of hearing loss that he experienced before beginning work for employer. The Appellate Review Unit of the Workers' Compensation Division of the Department of Consumer and Business Services (ARU) rejected that offset, finding that the undated audiogram did not comply

with the standards of OAR 436-035-0250. Petitioners requested a hearing, and the administrative law judge affirmed. Petitioners sought review before the board, which affirmed on the ground that the undated audiogram did not meet the requirements of OAR 436-035-0250(3).

On judicial review, petitioners contend that the board misconstrued OAR 436-035-0250. That rule provides, in pertinent part:

"(2) Compensation may be given only for loss of normal hearing which results from an on-the-job injury or exposure. Unless the conditions have combined pursuant to OAR 436-035-0007(4), hearing loss which existed before this injury or exposure will be offset against hearing loss in the claim, if adequately documented by a baseline audiogram obtained within 180 days of assignment to a high noise environment.

"(a) The offset will be done at the monaural percentage of impairment level.

"(b) Determine the monaural percentage of impairment for the baseline audiogram pursuant to section (4) of this rule.

"(c) Subtract the baseline audiogram impairment from the current audiogram impairment to obtain the impairment value due to this injury.

"(3) Hearing loss shall be based on an audiogram which must report on air conduction frequencies at 500, 1,000, 2,000, 3,000, 4,000 and 6,000 Hz.

"(a) Audiograms should be based on American National Standards Institute S3.6 (1989) standards.

"(b) Test results will be accepted only if they come from a test conducted at least 14 consecutive hours after the worker has been removed from significant exposure to noise.

"(4) Monaural hearing loss is calculated as follows * * *."[1]

_____

[1] Insurer issued the notice of closure on February 6, 2004. Accordingly, we cite the version of OAR 436-035-0250 that was in effect on that date. OAR 436-035-0003(1). OAR 436-035-0250 has since been amended in ways that do not affect our analysis.

Petitioners contend that the board erred in applying the rule—specifically, section (3)—to reject an offset based on the undated audiogram. Relying on the fact that sections (2) and (3) do not explicitly refer to each other but section (2) refers to section (4), they contend that sections (2) and (3) are entirely independent of each other. In petitioners' view, section (2) allows the offset of preexisting hearing loss whenever loss is adequately documented through testing conducted within 180 days of assignment to a high-noise environment, and section (3) relates only to the measurement of hearing loss at the time a claim is closed. Claimant responds that the rule was meant to be read as a whole and that to do otherwise would result in different standards for baseline and current audiograms and would allow the use of questionable baseline audiograms.

We conclude that OAR 436-035-0250(3) unambiguously applies to audiograms used to document hearing loss, including baseline audiograms such as the undated audiogram at issue here. We note, as did the board, that sections (2) and (3) both refer to "hearing loss." Although section (2) requires that a baseline audiogram "adequately document[ ]" hearing loss before the worker enters a high-noise environment, it does not describe what such documentation must entail. Section (3) addresses that gap by explaining how hearing loss is measured. Reading the rule as a whole, we conclude that "hearing loss" means the same thing in sections (2) and (3), and that the latter establishes the method for measuring hearing loss.

Contrary to petitioners' argument, nothing in the text of the rule suggests that the standards for audiograms differ depending on when the audiogram is taken. Subsection (2)(c) provides for a calculation of impairment based on subtraction of "the baseline audiogram impairment from the current audiogram impairment." Had the director intended to impose different standards for audiograms taken at different times, section (3) could easily have been limited to a "current" audiogram, as that term is used in subsection (2)(c). Instead, however, section (3) simply provides that "[h]earing loss shall be based on an audiogram" and sets standards that "an audiogram," without limitation, must meet. The only logical way to read the rule is that section (3) sets the standards for an audiogram used to calculate "hearing loss" at any time.

Petitioners nonetheless contend that, because subsection (3)(a) refers to 1989 ANSI standards, it cannot apply to baseline audiograms, given that some baseline audiograms (such as the undated audiogram) were administered before 1989. Petitioners do not contend that a rule excluding the use of pre-1989 audiograms as baselines would be beyond the director's authority or would be otherwise invalid. They contend only that the director cannot have intended such a result.

However, petitioners' argument finds no support in the text of the rule. Had the director intended to limit the application of subsection (3)(a) to audiograms conducted at claim closure or to a "current" audiogram as described in subsection (2)(c), the director could have said as much. The only plausible conclusion is that, as the board reasoned, the director intended to require all audiograms to meet the same standard, even though some older audiograms necessarily will not meet the requirements needed to support an offset. OAR 436-035-0250 sets an unambiguous standard for the measurement and offset of hearing loss, and the board did not err in its application of the rule.

Furthermore, petitioners would not be entitled to reversal even if we concluded that their construction of the rule is plausible. The board's interpretation of the rule is, at the very least, plausible; indeed, we have concluded that it is the only plausible interpretation. The best petitioners can attain, then, is a determination that the rule is ambiguous— in which case we would defer to the ARU's interpretation of the director's rule. *See SAIF v. Donahue-Birran*, 195 Or App 173, 181-83, 96 P3d 1282 (2004). Here, the ARU concluded that the rule required that a baseline audiogram be conducted at least 14 hours after claimant was removed from significant exposure to noise and be performed based on ANSI S3.6 (1989) standards. In other words, in the course of applying OAR 436-035-0250, the ARU interpreted the rule to require that a baseline audiogram meet the standards of OAR 436-035-0250(3). Deferring to that plausible interpretation, we would affirm in any event.

Affirmed.